U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

JUL 2 2 2008

ROBERT H. SHEMWELL, CLERK
BY _____
              DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| NOLAND J. HAMMOND | CIVIL ACTION NO. 07-0423 |
| -vs- | JUDGE DRELL |
| AMERICAN FAMILY LIFE ASSURANCE CO. OF COLUMBUS | MAGISTRATE JUDGE KIRK |

## RULING

Before the Court is a motion for summary judgment (Doc. 17) filed by the only remaining defendant, American Family Life Assurance Co. of Columbus ("Aflac"), seeking dismissal of all of the plaintiff's claims against it with prejudice. For the reasons set forth below, the motion will be granted, and a separate judgment will be issued

### I. BACKGROUND

The general facts may be summarized as follows: Noland J. Hammond, the plaintiff, is the named beneficiary under Aflac Policy No. PC144807, an accidental death policy on the life of Robert Miller in the principal amount of $25,000. Following the death of Mr. Miller in a single-vehicle automobile accident on August 18, 2004, Aflac refused to pay on the policy, citing the following policy exclusion in Part 2(B)(1) of the policy:

> B.  We will not pay benefits for an accident or Sickness that is caused by or occurs as a result of a covered person's:
>
> 1.  Participating in any activity or event, including the operation of a vehicle, while under the influence of a controlled substance (unless administered by a Physician and taken according to the Physician's instructions) or while intoxicated

> ("intoxicated" means that condition as defined by the law of
> the jurisdiction in which the accident occurred) . . . .

(Doc. 17-4, p. 16).

Mr. Hammond, a Louisiana resident, filed suit against Aflac, a Nebraska corporation with its principal place of business in Georgia, and Cliff Felber, a Louisiana resident, in the 9th Judicial District Court for the Parish of Rapides, Louisiana, on June 14, 2006, claiming that Aflac arbitrarily and capriciously failed to pay the claim, seeking both the principal amount of the policy and alleged statutory penalties.

On February 2, 2007, Mr. Hammond voluntarily dismissed Mr. Felber from the state suit, resulting in complete diversity for the first time. Aflac received written notice of the voluntary dismissal on February 5, 2007. On March 7, 2007, Aflac removed to this Court under 28 U.S.C. § 1446(b), citing appropriate jurisprudence and asserting diversity jurisdiction under 28 U.S.C. § 1332.

On January 28, 2008, Aflac filed the instant motion for summary judgment (Doc. 17), asserting that there are no genuine issues of material fact to preclude summary judgment. Pursuant to LR56.1, Aflac attached a detailed statement of uncontested facts (Doc. 17-2). Because Mr. Hammond failed to comply with LR56.2 by submitting "a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried," we deem the material facts set forth by Aflac to be admitted. LR56.2.[1]

---

[1] Attached to Mr. Hammond's opposition to the motion for summary judgment is a one-page self-styled "Statement of Uncontested Material Facts." The first paragraph of that document recites facts already contained in Aflac's statement of uncontested facts, and the one-sentence second paragraph simply contains the legal assertion that "AFLAC's exclusion of coverage is contrary to the mandatory provisions required under the provisions of Louisiana Insurance

In addition to setting out the facts already stated above, the statement of material facts contains a detailed narrative of the origin and chain of custody of a blood sample taken from the decedent at the scene of the accident by assistant coroner Barry Harrington, under the observation of Louisiana State Trooper Ed J. Francis. The blood sample was determined to contain 0.14g% ethyl alcohol. (Doc. 17-2). The validity of this analysis is not disputed by Mr. Hammond.

Once Aflac was notified of Mr. Miller's death, it first "sent a letter to Miller's estate, . . . requesting basic information required to process the claim: a copy of the certified death certificate, the beneficiary's statement, a copy of the police report including the toxicology report, and an authorization to release information to be completed by Miller's next of kin." (Doc. 17-2, par. 30). Beginning September 28, 2004, Aflac sent a total of five letters to Mr. Hammond, as the named beneficiary, seeking the same information. Mr. Hammond responded on May 2, 2005, including in an information packet the Louisiana Uniform Motor Vehicle Traffic Crash Report Supplement containing the results of the blood alcohol analysis. (Doc. 17-2, pars. 32-34). On June 7, 2005, Aflac notified Mr. Hammond that it was denying his claim based on the intoxication exclusion quoted above. (Doc. 17-2, par. 35).

In its memorandum in support of its motion for summary judgment, Aflac claims that it is entitled to summary judgment based on the undisputed fact that Miller's blood alcohol level was 0.14g% at the time of the accident. That argument is primarily based on the fact that La. R.S. § 14:98(A)(1)(b) (as was in effect on the accident date) defines

---

Code . . . ." (Doc. 20-2).

a blood alcohol content of 0.08g% as legally intoxicated for the crime of operating a vehicle while intoxicated. Aflac also asserts that, in any event, Mr. Hammond is not entitled to statutory penalties or attorney's fees under the Louisiana Insurance Code.

In opposition, Mr. Hammond does not dispute the facts presented by Aflac, and he now concedes that he is not entitled to statutory penalties or attorney's fees.[2] Otherwise, he makes two relevant arguments in response[3]: the Aflac policy exclusion does not comply with La. R.S. § 22:213(B)(10), and there is no presumption of intoxication for civil cases based on blood alcohol content alone. In connection with the latter argument, Mr. Hammond correctly cited Louisiana jurisprudence which requires expert testimony to interpret the blood alcohol content. Additionally, Mr. Hammond attached to his opposition the eyewitness testimony of one Ben Simon, who witnessed Mr. Miller's car lose control, veer off the road, and oversteer in trying to gain control before crashing. However, Mr. Simon testified only to the movement of the car and not to Mr. Miller's state of mind nor any other factors relevant to whether or not Mr. Miller was intoxicated.

Aflac then filed a supplemental memorandum in support, attaching the testimony of William J. George, Ph.D., a pharmacologist and toxicologist with a great deal of experience in the fields. Dr. George opined that a person with a 0.14g% blood alcohol level, as Mr. Miller had at the time of the accident, would suffer from significant impairments and would be more than 39 times as likely as a non-drinker to have a fatal

---

[2] The statutory penalties on multiple bases were originally enumerated and pled in the original plaintiff's petition.

[3] He also argues that under Louisiana law a death certificate cannot be used to establish the cause of death, only the fact of death. However, Aflac does not rely on the death certificate for the cause of death, so we need not address that argument.

4

single-vehicle accident. (Doc. 30-2, George Report, pp. 3-4). Dr. George concluded:

> It is therefore my professional opinion that at the time of his accident on the afternoon of August 18, 2004, Mr. Miller would have been clearly impaired by alcohol. And, this impairment would have been a significant contributing factor in the accident, in which he lost control of the vehicle and was killed.

(Doc. 30-2, George Report, p. 4).

Mr. Hammond has presented no evidence to contradict the report of Dr. George. What remains, then, is to determine the significance these facts have in light of the legal dispute. We now address the merits of the parties' arguments under the summary judgment standard.

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment

> should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Id. A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2510-11 (1986). If the movant produces evidence tending to show there is no genuine issue of material fact, the nonmovant must then direct the Court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 321-23, 106 S. Ct. 2548, 2552 (1986)). In the analysis, all inferences are drawn in the light most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory

allegations are not competent summary judgment evidence, and such allegations are insufficient to defeat a motion for summary judgment. Brock v. Chevron U.S.A., Inc., 976 F.2d 969, 970 (5th Cir. 1992). Finally, "a mere scintilla [of evidence] is not enough to defeat a motion for summary judgment." Davis v. Chevron U.S.A., Inc., 14 F.3d 1082, 1086 (5th Cir. 1994) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)).

### III. LAW AND ANALYSIS

We must address two arguments from Mr. Hammond: that the Aflac policy exclusion does not comply with La. R.S. § 22:213(B)(10), part of the Louisiana Insurance Code; and that, even if the intoxication exclusion is applicable, Aflac has not sufficiently shown, under Louisiana jurisprudence, that it is entitled to invoke it. The Louisiana Supreme Court has summarized the general standards for interpreting insurance contracts as follows:

> An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract. See La. Civ.Code art. 2045 . . . .
>
> Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. See La. Civ Code art. 2047 . . . . An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion. The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent.

\* \* \*

> If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms. The determination of whether a contract is clear or ambiguous is a question of law.

Cadwallader v. Allstate Ins. Co., 848 So. 2d 577, 580 (La. 2003) (case citations omitted).

The Aflac intoxication exclusion in Part 2(B)(1) of the policy reads:

> B. We will not pay benefits for an accident or Sickness that is caused by or occurs as a result of a covered person's:
>
> 1. Participating in any activity or event, including the operation of a vehicle, while under the influence of a controlled substance (unless administered by a Physician and taken according to the Physician's instructions) or while intoxicated ("intoxicated" means that condition as defined by the law of the jurisdiction in which the accident occurred) . . . .

(Doc. 17-4, p. 16).

The policy provision itself is not ambiguous or otherwise subject to attack under the Cadwallader standards; in any event, that is not what Mr. Hammond argues. Instead, he asserts the provision violates La. R.S. § 22:213(B)(10), which provides:

> **B. Other provisions (optional).** No such policy shall be delivered or issued for delivery containing provisions respecting the matters set forth below unless such provisions are, in substance, in the following forms, or, at the option of the insurer, in forms which in the written opinion of the commissioner of insurance are not less favorable to the policyholder:
>
> * * *
>
> (10) Intoxicants and narcotics: The insurer shall not be liable for any loss sustained or contracted in consequence of the insured's being intoxicated or under the influence of narcotics unless administered on the advice of a physician.

Id.

Obviously, under the introduction to Section 213(B), an insurance policy's intoxication exclusion does not have to follow Section 213(B)(10)'s form exactly, but must reach its substance. The policy provision at issue does exactly that. Section 213(B)(10) contains the following elements: (1) an exclusion of liability for (2) loss in consequence of (3) the insured's intoxication. "Intoxication" is not defined in the model exclusion and is thus defined by general Louisiana law.

The Aflac intoxication provision also contains (1) an exclusion of liability ("We will not pay benefits for an accident or Sickness . . .") for (2) loss in consequence of (". . . that is caused by or occurs as a result of. . .") (3) the insured's intoxication ("Participating in any activity or event, including the operation of a vehicle, . . . while intoxicated ('intoxicated' means that condition as defined by the law of the jurisdiction in which the accident occurred)"). (Doc. 17-4, p. 16). The Aflac provision explicitly relies on state law—in this case, Louisiana law—to define "intoxication." Clearly, the Aflac provision complies, in substance, with Section 213(B)(10), Mr. Hammond's argument to the contrary notwithstanding.

Mr. Hammond argues that, even if the intoxication exclusion applies, Aflac has failed to prove intoxication under Louisiana jurisprudence. First, Mr. Hammond is correct that the legal limit of blood alcohol concentration found in La. R.S. § 14:98(A)(1)(b)—0.08g%—does not give rise to a presumption of intoxication in civil proceedings. La. R.S. § 32:662(C). Mr. Hammond also correctly cites authority for the assertions that "[t]he finding of a specific blood alcohol content standing alone is not evidence that an individual is not capable of operating a motor vehicle," Whittington v.

American Oil Co., 508 So. 2d 180, 186 (La. App. 4 Cir. 1987) (emphasis added);and without expert testimony, a trial judge may not determine the effects of a particular blood alcohol content based upon his own opinion, Pereira Enterprises, Inc. v. Soileau, 551 So. 2d 39, 41 (La. App. 1 Cir. 1989) (citing Brown v. Collins, 223 So.2d 453, 456 (La.App. 3d Cir.1969)). Another court summarized the burden of proof in civil cases as follows:

> Defendant was not incorrect in its understanding, but this presumption of intoxication is applicable to criminal proceedings only, and has no application to a civil action. LSA-R.S. 32:662; Prestenbach v. Sentry Insurance Co., 340 So.2d 1331 (La.1976). However, a civil litigant may introduce evidence of a person's blood alcohol content and have competent expert witnesses interpret whether such would result in intoxication and what effects it would have on the person's ability to operate a motor vehicle. Clay v. Bituminous Casualty Corp., 401 So.2d 1257 (La.App. 1st Cir.1981), writ denied, 409 So.2d 616 (La.1981). Defendant introduced neither expert nor lay testimony in support of its contention that Sharon Remedies was intoxicated. Since there is no legal presumption of intoxication in civil cases, defendant has failed to prove decedent's intoxication by a preponderance of the evidence.

Remedies v. Trans World Life Ins. Co., 546 So. 2d 1380, 1383 (La. App. 3 Cir. 1989).

In the instant case, Aflac has presented evidence not only of Mr. Miller's blood alcohol concentration, but also the impact that his blood alcohol concentration would have had on his driving ability. Dr. William J. George, Ph.D., a pharmacology and toxicology expert with several decades of experience in those fields, testified that Mr. Miller's 0.14g% blood alcohol content would have "clearly impaired" his driving ability and "this impairment would have been a significant contributing factor in the accident . . . ." (Doc. 30-2, George Report, p. 4). Mr. Hammond has not refuted any of the facts presented by Aflac concerning Mr. Miller's intoxication. Instead, Mr. Hammond

9

presented only the deposition testimony of the eyewitness to the accident, Mr. Simon. Mr. Simon witnessed only the accident itself and was unable to testify as to Mr. Miller's state of mind; consequently, his testimony is irrelevant to the determination of whether or not Mr. Miller was intoxicated.

In short, all of the evidence before us suggests that Mr. Miller was, in fact, intoxicated under applicable Louisiana law, taking into account the impact his blood alcohol content, 0.14g%, would have had on his driving ability. Mr. Hammond has presented no relevant evidence to the contrary. Thus, there is no genuine issue of material fact. Under these facts, we find Aflac was entitled to invoke the intoxication exclusion in Part 2(B)(1) of Aflac Policy No. PC144807. Accordingly, Aflac is entitled to summary judgment.

## IV. CONCLUSION

For the foregoing reasons, the motion for summary judgment (Doc. 17) filed by defendant Aflac is GRANTED. By separate judgment, all of the plaintiff's claims will be dismissed, which shall terminate this suit.

SIGNED on this 22 day of July, 2008 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE